**UNITED STATES DISTRICT COURT**

**DISTRICT OF NEVADA**

\* \* \*

| | |
|---|---|
| ZUFFA, LLC, a Nevada limited liability company, dba ULTIMATE FIGHTING CHAMPIONSHIP,<br><br>　　　　　Plaintiff,<br><br>　vs.<br><br>JUSTIN.TV, INC., a Delaware corporation dba JUSTIN.TV,<br><br>　　　　　Defendant. | Case No.: 2:11-cv-00114-RLH-VCF<br><br>**O R D E R**<br><br>(Motion to Dismiss–#12) |

Before the Court is Justin.tv, Inc.'s **Motion to Dismiss** (#12, filed Sept. 16, 2011) based on a failure to state a claim and immunity from suit under § 230 of the Communications Decency Act. The Court has also considered Zuffa, LLC's Opposition (#18, filed Oct. 24), and Justin.tv's Reply (#24, filed Dec. 2).

**BACKGROUND**

This is a copyright and trademark infringement case. Justin.tv is a technology company and website operator. Justin.tv operates a website that allows users to stream or broadcast live video across the internet to other Justin.tv users. In many ways, Justin.tv is akin to

1

AO 72
(Rev. 8/82)

YouTube or Vimeo, but rather than user-provided prerecorded video, Justin.tv allows its users to stream live video across the internet. In practice, these live-streams may be anything from a family gathering, to someone playing a video game, to copyrighted sports broadcasts, and beyond.

Zuffa operates and does business as the Ultimate Fighting Championship ("UFC"), and claims to be the premier mixed martial arts ("MMA") company in the United States. Zuffa has various trademarks, including "Ultimate Fighting Championship," "UFC," and the "Octagon" special eight-sided ring in which the UFC MMA bouts take place. Zuffa also frequently broadcasts its copyrighted bouts on television, particularly pay-per-view. Here, Zuffa alleges that Justin.tv users streamed a particular bout for which Zuffa had a copyright using Justin.tv's services, specifically, the UFC 121 Lesnar v. Velasquez bout ("UFC 121") on October 23, 2010.

On January 21, 2011, Zuffa brought suit based on the live-streaming of the UFC 121 fight through Justin.tv's service. Zuffa asserts 12 claims against Justin.tv alleging various types of copyright and trademark infringement, unfair trade practices under Nevada law, and that it violated various laws related to cable and satellite theft. Now before the Court is Justin.tv's motion to dismiss the non-copyright claims for failure to state a claim and because of statutory immunity. For the reasons discussed below, the Court grants Justin.tv's motion in part and denies it in part.

**DISCUSSION**

**I.  Standard**

A court may dismiss a plaintiff's complaint for "failure to state a claim upon which relief can be granted." Fed. R. Civ. P. 12(b)(6). A properly pled complaint must provide "a short and plain statement of the claim showing that the pleader is entitled to relief." Fed. R. Civ. P. 8(a)(2); *Bell Atlantic Corp. v. Twombly*, 550 U.S. 544, 555 (2007). While Rule 8 does not require detailed factual allegations, it demands "more than labels and conclusions" or a "formulaic recitation of the elements of a cause of action." *Ashcroft v. Iqbal*, 129 S. Ct. 1937, 1949 (2009) (citing *Papasan v. Allain*, 478 U.S. 265, 286 (1986)). "Factual allegations must be enough to rise

above the speculative level." *Twombly*, 550 U.S. at 555.  Thus, to survive a motion to dismiss, a complaint must contain sufficient factual matter to "state a claim to relief that is plausible on its face." *Iqbal*, 129 S. Ct. at 1949 (internal citation omitted).

In *Iqbal*, the Supreme Court recently clarified the two-step approach district courts are to apply when considering motions to dismiss.  First, a district court must accept as true all well-pled factual allegations in the complaint; however, legal conclusions are not entitled to the assumption of truth.  *Id*. at 1950.  Mere recitals of the elements of a cause of action, supported only by conclusory statements, do not suffice.  *Id*. at 1949.  Second, a district court must consider whether the factual allegations in the complaint allege a plausible claim for relief.  *Id*. at 1950.  A claim is facially plausible when the plaintiff's complaint alleges facts that allows the court to draw a reasonable inference that the defendant is liable for the alleged misconduct.  *Id.* at 1949.  Where the complaint does not permit the court to infer more than the mere possibility of misconduct, the complaint has "alleged—but not shown—that the pleader is entitled to relief."  *Id*. (internal quotation marks omitted).  When the claims in a complaint have not crossed the line from conceivable to plausible, the complaint must be dismissed.  *Twombly*, 550 U.S. at 570.

**II.    Analysis**

Justin.tv seeks dismissal of each of Zuffa's non-copyright claims, arguing that they improperly duplicate Zuffa's copyright claims.  Further, Zuffa argues that the eleventh and twelfth claims for violation of the Communications Act, 47 U.S.C. §§ 553, 605, (what is colloquially known as "stealing cable") are both barred by § 230 of the Communications Decency Act, 47 U.S.C. § 230, and are inapplicable to the factual allegations here.  Further, Zuffa stipulates to the dismissal of its 10th claim (Nevada unfair trade practices), and thus, the Court dismisses this claim and will not discuss it further.

/

/

/

### A.     Trademark Claims

Both Justin.tv and Zuffa analyze all five of Zuffa's trademark claims together rather than individually. The Court sees no reason to change course and will do so as well, save one footnote.

Congress enacted the copyright and trademark statutes to protect different types of intellectual property and redress different types of harm. *See Polar Bear Productions, Inc. v. Timex Corp.*, 384 F.3d 700, 721 (9th Cir. 2004) ("Copyright and trademark are related but distinct property rights, evidenced by different federal statutes governing their protection."); *see also Bach v. Forever Living Products U.S., Inc.*, 473 F.Supp.2d 1110, 1116-17 (W.D. Wash. 2007). However, the Supreme Court has also cautioned "against misuse or over-extension of trademark and related protections into areas traditionally occupied by patent or copyright" so as not to create "mutant copyright law" or "perpetual patent and copyright, which Congress may not do." *Dastar v. Twentieth Century Fox Film Corp.*, 539 U.S. 23, 34, 37 (2003).

####     1.     *Dastar* Analysis

Justin.tv relies entirely on the Supreme Court's decision in *Dastar*, and cases interpreting *Dastar*, to support its argument that the Court should dismiss Zuffa's trademark claims. In *Dastar*, the Court held that reverse passing off claims[1] under § 43(a) of the Lanham Act, 17 U.S.C. § 1125(a), cannot be used to create mutant copyrights or perpetual copyrights. The issue the Supreme Court faced in *Dastar* was whether a once copyrighted video series that had fallen into the public domain could be edited and resold without "proper" attribution to the original creators without facing liability for reverse passing off under § 43(a). *Dastar*, 539 U.S. at 27-28. The Court analyzed the "false origin of goods" language in the Lanham Act and held that the Lanham Act was best interpreted as referring to the origin of the physical goods and not the creator

---

[1] "Reverse passing off" is defined as "removing or obliterating the original trademark without authorization before reselling goods produced by someone else." *Shaw v. Lindheim*, 919 F.2d 1353, 1364 (9th Cir. 1990).

of the intellectual property that is the essence of those goods, *e.g.*, the actual video cassettes sold and not the intellectual property at issue in *Dastar*. *Id.*, at 33-35.  The intellectual property embodied by physical goods, such as a video cassette, DVD, or other technical product, was protected by copyright or patent law, not trademark or unfair trade practices law generally.  *Id.*

This case is critically different from *Dastar*, at least in certain respects.  We are not dealing physical product with modified intellectual property.  Rather, we are dealing with the display of a company's actual trademarks as part of a video stream over the internet, which is more akin to *Sega Enter's Ltd. v. MAPHIA*, 948 F. Supp. 923 (N.D. Cal. 1996).  In *Sega*, the Court found both copyright and trademark infringement when pirated video games displayed the SEGA logo and trademark when played.  *Id.* at 928.  Though this case was decided years before *Dastar*, the Court finds that it is still good law as regarding the actual display of trademarks.  This is not a "reverse passing off" claim (or even exactly a "passing off" claim to which *Dastar* would also likely apply) but a basic trademark claim (and associated contributory trademark, etc. claims).  Had *Dastar* produced the exact same video series as it did but either included or left in a Twentieth Century Fox watermark logo[2] (similar to the display of the SEGA trademark in a splash screen) the facts of the case would have been quite different, and the outcome would likely have been at least partially different as well.  Because Zuffa alleges that Justin.tv displayed Zuffa's trademarks as part of the video streams *Dastar* does not apply in that regard.  Therefore, because the Court must interpret the allegations in the light most favorable to Zuffa at this stage, the Court will not dismiss Zuffa's trademark claims in their entirety.

### 2. Limitations on the Trademark Claims

Nonetheless, a few issues remain which the Court will quickly address. Under *Dastar*, Zuffa may not maintain a trademark claim based on the display of the Octagon, or the ring

---

[2] The Court generally presumes that any person who watches television is familiar with watermarks on video even if they are not aware of the term.  Watermarks are such things as the ESPN or FOX logo in the bottom or top corner of a broadcast.

in which its fighters fight, in this type of factual scenario. This is because it would give rise to the legal issues the Court addressed in *Dastar*. Essentially, if Zuffa were allowed to proceed on a trademark claim for the display of the Octagon ring, or other trademarks inherently part of the copyrighted broadcast, Zuffa would possess a mutant-copyright or perpetual copyright because nobody would ever be able to copy the video and display it regardless of whether the copyright had entered the public domain. This is the exact situation the Supreme Court disallowed in *Dastar*. At this stage, the Court limits Zuffa's trademark claims only to the display of Zuffa's trademarks which are not an inherent part of the video broadcast. The Court will address whether the watermark logo (or, possibly, other trademarks) is an inherent part of the video at a later stage in these proceedings.[3]

### B.   The Communications Act and Immunity

Zuffa's claims under the Communications Act present novel questions for the Court. Justin.tv presents two arguments why the Communications Act claims fail: (1) Zuffa fails to state a claim as the Communications Act does not pertain to the alleged conduct in this case, and (2) even if Zuffa has stated claims, Justin.tv is protected by statutory immunity from suit under § 230 of the Communications Decency Act.

#### 1.   Failure to State a Claim

The Communications Act states: "No person shall intercept or receive or assist in intercepting or receiving any communications service offered over a cable system, unless specifically authorized . . . ." 47 U.S.C. § 553(a)(1). It further states: "No person not being authorized by the sender shall intercept any radio communication and divulge or publish . . ." and "No person not being entitled thereto shall receive or assist in receiving any interstate or foreign

---

[3] The Court also expresses extreme doubt that Zuffa's inducement to trademark infringement claim should survive this motion to dismiss. It does not seem that merely providing basic information about how to use a video capture card can be considered "inducement" to copyright infringement anymore than a course on marksmanship or gun safety is inducement to murder or any other crime. However, since Justin.tv did not actually address this claim or its elements individually, thus largely depriving Zuffa of a chance to brief this issue, the Court will allow the claim to proceed for now.

communication by radio . . . ." *Id.*  These statutes are targeted at cable (and satellite) service theft, generally, though not exclusively, through the use of content descramblers and the like. *See, e.g.*, *TWC Cable Partners v. Cableworks, Inc.*, 966 F. Supp. 305, 308-09 (D.N.J. 1997) ("By its plain language, it is clear that this section was specifically designed to regulate the theft of cable service. Indeed, its legislative history reinforces this conclusion by providing that § 553(a) is 'primarily aimed at preventing the manufacture and distribution of so-called 'black boxes' and other unauthorized converters which permit reception of cable service without paying for the service.'" (quoting H.R. Rep. No. 98–934, at 84, *reprinted in* 1984 U.S.C.C.A.N. 4655, 4721.))  The statutes are also commonly applied against bar or motel owners extending their cable/satellite purchases beyond their authorized limitations, *see, e.g.*, *Home Box Office, Inc. v. Corinth Motel, Inc.* 647 F. Supp. 1186 (N.D. Miss. 1986) (motel owner who split one cable signal into multiple rooms); *Nat'l Satellite Sports, Inc. v. Time Warner Entm't Co. L.P.*, 217 F.Supp.2d 466 (S.D.N.Y. 2002) (bar owner who paid residential rate and broadcast a sporting event commercially in his bar).

Here, Zuffa does not allege that Justin.tv actually intercepted or received a cable or satellite broadcast, *i.e.*, a television signal from a television cable operator over cable infrastructure or a radio signal transmitted by satellite.  Rather, Zuffa alleges that Justin.tv users received a cable or satellite broadcast (without allegations to the legality of the reception) and then sent a digital copy of that broadcast by internet video stream to Justin.tv for general public availability.[4]  In essence, Zuffa alleges that Justin.tv's users copied Zuffa's UFC event and then rebroadcast the UFC event over the internet.[5]  This is not the type of conduct properly addressed by the

---

[4] Zuffa attaches a Justin.tv wiki page explaining the use of video capture cards designed to record video device output.  (Dkt. #7, First Am. Compl., Ex. 2.)  Presumably, Zuffa alleges this is how the users copied the cable or satellite broadcasts.

[5] This is technologically a very different act than that committed in the cases cited by Zuffa where business proprietors actually extended the point of distribution *of the actual broadcast signal* distributed over a cable (or satellite) system beyond its authorized limits. *See* H.R. Rep. No. 98-934 at 83 (1984), *reprinted in* 1984 U.S.C.C.A.N. 4655, 4721; and compare *Corinth Motel, Inc.* 647 F. Supp. 1186.  In the *Corinth Motel* case, the motel actually split and extended the signal coming over the cable system, sending the it to various different rooms.  Here, the allegations are that a copy of the signal was made after the signal terminated at some device.

Communications Act, but by copyright law (and, potentially, trademark law) because Justin.tv had no relationship with the original cable or satellite signal: by the allegations, Justin.tv did not receive or intercept any actual cable or satellite signal or broadcast.  The Court finds no evidence in the statutory language, other cases, or legislative history that the Communications Act addresses this type of conduct or was meant to bolster or act as a separate type of copyright claim.[6]  The Court refuses to extend the law in this manner.  Thus, the Court dismisses Zuffa's eleventh and twelfth claims.

### 2.  Immunity

Justin.tv also argues that it is immunized from the Communications Act claims by § 230 of the Communications Decency Act.  This is a novel question.  Section 230 provides broad immunity from suit to providers of "interactive computer services" for content posted by "another information content provider."  47 U.S.C. § 230(c); *see also Carafano v. Metrosplash.com Inc.*, 339 F.3d 1119, 1122-23 (9th Cir. 2003).  This statute has been most frequently used to limit suit against websites for allegedly defamatory comments or reviews created by their users, though it is not limited to this type of content as it is to be interpreted broadly.  *See, e.g.*, *id.*; *Levitt v. Yelp! Inc.*, 2011 WL 5079526 (N.D. Cal. Oct. 26, 2011).  Neither the Court nor the parties have found a case where § 230 has been asserted as a defense against Communications Act claims.  However,

---

This both changes  what the signal is, how it is being distributed, and removes it from the point of distribution relevant to the statute.

[6] Finally, the Court notes, despite an abundance of footnotes in this order, that there are other reasons it finds that these statutes do not apply to conduct such as that alleged here.  Zuffa argues that Justin.tv's mere receipt of its users' UFC video streams creates liability under the Communications Act.  Logically, if the Court were to allow claims such as these, it would have to allow similar Communications Act claims against scores of "cloud computing" service providers such as Microsoft, Apple, Google, Amazon.com, Dropbox, Box.net, and others because Jusint.tv's particular streaming service would be irrelevant.  As an example, say a person took a snippet (or longer) of video of a UFC match being broadcast on their television with their iPhone, Windows Phone, etc.  The iPhone then automatically uploads that video to one of dozens of cloud storage systems such as Apple's iCloud.  The Court refuses to find that Apple (or Microsoft, etc.) would be liable under the Communications Act for merely receiving and storing this data under the Communications Act.  Yet, Zuffa argues for exactly this result when it argues that Justin.tv's mere receipt of this video stream makes Justin.tv liable.  In passing the Communications Act, Congress did not intend such a result, and this Court will not broaden the effect of the statute in this manner.

neither can the Court or the parties find an instance where a plaintiff has asserted Communications Act claims under facts similar to these. Rather, again, Communications Act claims are generally colloquially referred to as claims for "stealing cable." As discussed above, they are then generally asserted against bar or motel owners who exceed the scope of their cable or satellite licenses or producers or users of descrambling equipment. In cases such as these for illegally streaming copyright protected video, such as against YouTube, plaintiffs simply assert copyright (and maybe trademark) claims, *see, e.g.*, *Viacom Intern. Inc. v. YouTube, Inc.*, 718 F.Supp.2d 514 (S.D.N.Y. 2010), not cable theft. Because the Court has already determined that Zuffa has failed to state claims under the Cable Communications Act, the Court will not address the novel issue the parties present of whether § 230 immunity would apply in such a case.

  **C.**  **Remedies**

    Justin.tv also wants the court to dismiss certain of Zuffa's requests for relief. The Court finds that addressing these issues is not necessary at this stage and defers addressing the requests for relief.

## CONCLUSION

    Accordingly, and for good cause appearing,

    IT IS HEREBY ORDERED that Justin.tv's Motion to Dismiss (#12) is GRANTED in part and DENIED in part as follows:

- Zuffa's trademark claims remain but are limited to those trademarks that are not an inherent part of the broadcast.
- Zuffa's 10th-12th claims for unfair trade practices and violations of the Communications Act are dismissed.

    Dated: March 8, 2012.

_____
ROGER L. HUNT
United States District Judge